REMER v. FLYING EAGLE WHITEWAY
LINES, Inc.

BALLARD v. FLYING EAGLE WHITEWAY
LINES, Inc.

Nos. 114, 115, 21165, 21166.

United States Court of Appeals
Second Circuit.

Feb. 21, 1949.

Philip R. Shiff, of New Haven, Conn., for defendant-appellant.

David M. Reilly, of New Haven, Conn. (Albert B. Gardella, of Ansonia, Conn., on the brief), for plaintiff-appellee Remer.

Charles M. Lyman, of New Haven, Conn. (Charles A. Watrous, of New Haven, Conn., on the brief), for plaintiff-appellee Ballard.

**832**

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

These actions, tried together, seek damages for the death of Charles E. Remer and the injuries to Caroline C. Ballard, both passengers on a bus owned and operated by defendant Flying Eagle Whiteway Lines, Inc., when its left front tire blew out, causing a collision and the resulting death of the one passenger and the injury of the other. The tire had been manufactured by the Firestone Tire and Rubber Company, a defendant below, which had leased it to Flying Eagle on a contract whereby the latter paid on the basis of the tire's mileage. At the trial there was evidence that the tire had been recapped prior to the accident; that it was well worn; that it had been on the wheel of an unused bus, left out in the open for almost a year, and only placed on this bus a few days before the accident; and that it was unsafe for use on a front wheel, where it was not supported by another or a dual tire, as it would have been in the rear. There was also testimony by defendant Firestone's expert that later inspection of the tire showed the blow-out to have been due to a fracture in the tire casing, which must have occurred some time before the accident. The court below directed a verdict for defendant Firestone on the basis that this uncontradicted expert testimony negatived any connection between the previously observed condition of the tire and the fracture. It then submitted the cases to the jury against this defendant on a charge explaining the elements of res ipsa loquitur without discussing specific grounds of negligence. Verdicts and judgments of $20,000 and $17,500 for Remer and Ballard respectively resulted in these appeals.

Before appealing, defendant Flying Eagle moved the district court to set aside the verdicts on the same grounds it now assigns as error to us. One of these grounds, vigorously pressed, is that the court erred in directing a verdict for Firestone. After defendant had filed its motion below, each plaintiff moved for a new trial; but in each case the motions were withdrawn before the court denied appellant's motions and neither plaintiff has appealed. In Connecticut there is no contribution between tort feasors equally responsible for an accident, and it is well settled that one alone cannot complain of action taken by the court in favor of the other. Rose v. Heisler, 118 Conn. 632, 174 A. 66; Tierney v. Correia, 123 Conn. 146, 193 A. 201; Rode v. Adley Express Co., 130 Conn. 274, 33 A.2d 329; Griswold v. Connecticut Co., 131 Conn. 248, 38 A.2d 676; Friend v. Middle Atlantic Transportation Co., 2 Cir., 153 F.2d 778, 780, certiorari denied Friend v. Friend, 328 U.S. 865, 66 S.Ct. 1370, 90 L.Ed. 1635. We have seen no reason why that rule should not be applied in the federal courts. Friend v. Middle Atlantic Transportation Co., supra; and compare Denver City Tramway Co. v. Norton, 8 Cir., 141 F. 599. Consequently, however prejudicial to the plaintiffs may have been the court's acts, the defendant cannot be heard to complain. It is still true, however, that if there are independent grounds of error as to this defendant, fairness may nevertheless dictate a reversal as to all defendants. Fabrizi v. Golub, 134 Conn. 89, 55 A.2d 625; Nebel v. Burrelli, 352 Pa. 70, 41 A. 2d 873. Hence our attention is properly confined in the first instance to an examination of these grounds. Since, as will appear, we do not find them to require reversal, we have no occasion to go further.

Defendant-appellant claims error as to the court's charge of res ipsa loquitur, contending that the evidence furnished no basis for the application of the doctrine and that its application was also excluded because of the charges of and evidence tending to prove specific acts of negligence. This presents the most substantial point of the appeal. Counsel have tended to treat the question of res ipsa here as one of arbitrary definitive categorization of tire blow-out cases; and so, too, did the judge in colloquies with counsel. Yet, as we shall see, his charge was actually more general and less precise. Since we are interested only in the charge given, the question before us is whether or not its generality was unfairly prejudicial to this appellant in the light of the actual case before the jury.

To understand the situation it is necessary to summarize more fully the evidence concerning this fateful tire. There was no dispute as to its age, use, retreading, exposure to the elements, and worn condition; its complete history from its first delivery for use by appellant in July, 1943, was carefully traced. Plaintiffs also introduced evidence from a Firestone serviceman whose duty it was to make weekly inspections of tires at appellant's Danbury terminal. He had observed this tire standing on an old unused bus in appellant's yard there for nearly a year prior to and including his inspection of May 28, 1946; at that time the left front tire then on the bus later involved in the accident was leaking, and he ordered two new tires and two new tubes from his New York office to be delivered in Danbury as soon as possible. But when he returned the next week, June 4, 1946, he found that the new tires had not arrived and that this old tire had been taken from the rear of the unused bus and placed upon the left front wheel of the bus in use. He objected to a garage mechanic of Flying Eagle, who, he said, was taking the place of the regular shop foreman, because it was a retread, and he did not like retreads on the front wheels, where there were not the dual wheels of the rear. The mechanic, called later by Firestone, confirmed this, although appellant introduced evidence that he was not in charge and that the matter was not brought to the attention of the actual manager of the bus terminal. The blow-out and resulting collision occurred on June 8, 1946, on a return trip of the bus from New Haven back to Danbury and after the tire had been in use on this bus for about 210 miles.

It was Firestone's avowed object to show its own freedom from negligence not only by the circumstances of its contract and the governing law, under both of which it claimed that responsibility for the condition of the vehicle and its tires to the public rested only upon appellant, but also because the accident was due to the "atrocious" negligence of appellant. So Firestone called one Weins, a tire expert from the United States Rubber Company, who gave testimony based upon his inspection of the tire in evidence made shortly before the trial, or somewhat more than a year after the accident. Weins testified in detail as to the worn condition of the tire and the deterioration of the rubber and fabric. He expressed the emphatic opinion that the tire should not have been used on the front at all; he did say as to use on the rear with the dual wheels: "It would be safe, but only in the winter months, not in the summer months—due to heat change." After his position had been thus thoroughly developed upon examination and cross-examination the court then asked him whether or not he was able to say from his examination of the tire "what caused it to blow out?" He answered, "Yes," and went on under the court's prompting to say: "The tire had a fracture in it. The fabric was broken. And that particular kind of an injury is due to striking some obstruction. It was in there, I dare say, for several days. And by that I mean for at least a hundred miles or more. The evidence is right on the tire." Then to the court's question whether or not the fracture was "something that could have been discovered by inspection," he answered, "Oh, yes"; but counsel for a plaintiff objected, and the court said that it would not press the question and that the jury might disregard the answer. The reason for the objection is obscure; possibly counsel thought he had this appellant thoroughly hooked and was anxious to preserve his position as to Firestone.

Later testimony from Weins brought out that he fixed the distance the tire must have gone after the fracture by the wearing off of the rubber near the bulge due to it; that it was "next to impossible to wear off as much rubber as we have worn off here in one spot in fifty miles or even a hundred miles." His testimony closed with further evidence as to the deterioration of the fabric through heat, water in cuts and the like, pointing to three cuts nearly through the fabric, a fact which "in itself should have taken the tire out of service." It is clear that the court was impressed by Weins's answers to its own questions. For it granted Firestone's motion for a directed verdict on the sole ground of lack of proximate cause, without passing upon the oth-

er questions as to the extent of Firestone's duty under the contract or the general law as to passengers in the bus. In the colloquy with counsel it expressed the view that the general condition of the tire was only "a piece of background," and that "the blow-out might as well have occurred if a brand new tire had been put on the wheel on June 4." Later, on plaintiffs' exception to the charge as being entirely on res ipsa, it stated its doubt whether there was any other evidence of proximate cause.

This view of the evidence was, we think, not justified, but indeed quite prejudicial to the plaintiffs. Even had the expert been as decisive as the court thought in restricting the cause to this single one, his view should not have been held so far beyond dispute as to remove the question from the jury's consideration. The tire itself was in evidence and the jury could draw its own conclusions, particularly because the worn condition of the tire is most apparent, whereas the prior character of the fracture would hardly have been guessed at but for the expert's statement. But it seems clear to us that the expert had no intention of excluding the worn condition of the tire as a contributing cause, nor does his testimony actually do so. His great emphasis throughout, except for this somewhat brief colloquy with the court, was upon the worn condition of the tire and the danger involved in putting it on the front wheel of the bus. Hence when he attributed the immediate cause of the blow-out to a fracture in the fabric it is not to be supposed that he was repudiating or discarding almost his entire testimony as being at best quite irrelevant and thoroughly misleading. It is perhaps odd that no one thought to make explicit by direct question and answer what we believe was thus implicit. But clearly he was not trying to deny what common sense and experience tell us, namely, that a fracture, stone bruise, or other immediate cause of a deflation of a tire may occur much more readily and naturally in a worn-out than in a new tire. Hence when the court limited the plaintiffs' entire case to a possible inference from the circumstances, without reference to these several possibilities of

finding negligence, and indeed with a definite suggestion excluding other causes, the plaintiffs received a less favorable, and the appellant a correspondingly more favorable, charge than the evidence warranted.

But of course the plaintiffs are not assigning error; instead we must consider what, if any, justified objection this appellant can make. The charge itself was comparatively brief and contained no rehearsal of the evidence. First the court gave detailed instructions that the actions were based upon claims of negligence which must be proven by the plaintiffs; and it added the statement, in accord with Connecticut law, Peck v. Fanion, 124 Conn. 549, 1 A.2d 143, 145, that "the highest degree of care and skill" was required of common carriers of passengers. The court's iteration of this basis of the action makes untenable another error assigned by appellant, namely, the court's refusal of its request to charge that it was not an insurer of its passengers. In view of what was actually said there was no need so to gild the lily. Then the court, having said it was going to instruct as to a rule of law "traveling under a Latin name," went on to set forth the several elements which it found to be a part of the rule—though actually it never did state its Latin name. It followed this with a brief explanation of some of the details, then repeated the elements a second time, and ended with a final emphasis upon the burden resting upon the plaintiffs to prove every essential of their case by a fair preponderance of the evidence.

Of these elements stressed by the court, the more immediately important for us to note are its instructions that for plaintiffs' recovery the jury must find "that in the ordinary instance a blow-out of a tire on a bus, such as that involved in this collision does not occur unless there has been carelessness in inspecting or using the tire," and that both inspection and use of the tire at the time were in the control of the bus company. These statements then led to the conclusion that findings upon the points stressed, "in the absence of explanation by the bus company, would justify a conclusion that the accident arose from a want of care on the part of the defendant

bus company." No mention was made of the claimed fracture of the tire or of its worn condition. But the jury could thus infer carelessness in inspection or use from the blow-out under the circumstances of the case and in the absence of explanation by appellant. But if appellant did not like so generalized a charge, what was its alternative? In fact, it did not suggest a specific alternative, nor could it do so without asking the judge to spell out its situation, which would have been fairly damning upon the evidence of its picking up this well-worn and seemingly discarded tire for use in a highly dangerous way. It is obvious that the court was looking for a form of instruction broad enough to cover the case of fracture, which it had concluded to be the proximate cause of the collision. Certainly the court was correct so far forth. Had it allowed the jury to believe that, if they found the fracture to have caused the blow-out, they then must find for the appellant, then surely it would have committed error as to plaintiffs.

▮ Hence had appellant requested any instruction based upon a finding that the fracture was the direct proximate cause, it must then have also suggested the further necessary charge that the jury might consider whether a fracture of a tire so worn might not reasonably have been foreseen or, if existing, have been disclosed by inspection. Obviously, however, appellant did not desire such a detailed instruction supplying the very rationalizations for a conclusion of negligence. It was better off with the generalities which would merely permit the conclusion to be drawn from all the circumstances. It could not hope for a directed verdict. Having had the benefit of as favorable a charge as it could possibly have hoped for, it is in no position to complain of the result.

We see nothing in the precedents to afford appellant greater comfort. It cites cases to support a contention that the unexplained blowing out of a tire does not furnish a basis for res ipsa loquitur; but the cases involved different situations, including pleasure cars, cars where proof of the element of control was lacking, and cars whose tires did not have the extensive past, and limited future, of the tire here.

See Pawlowski v. Eskofski, 209 Wis. 189, 244 N.W. 611; Zarrillo v. Stone, 317 Mass. 510, 58 N.E.2d 848; Giddings v. Honan, 114 Conn. 473, 159 A. 271, 79 A.L.R. 1215. However much an inference of negligence from the blowing out of a sound tire may be questioned, the same doubt can hardly apply in the case of an old tire on the front of a heavy passenger bus.

▮ Even less justified under the circumstances would be a requirement of election at the trial between specific negligence and res ipsa loquitur. Such a requirement is at war with the settled rule in Connecticut, in accordance with the better authorities, that a plaintiff may rely upon both contentions in his complaint. Firszt v. Capitol Park Realty Co., 98 Conn. 627, 120 A. 300, 29 A.L.R. 17; Briganti v. Connecticut Co., 119 Conn. 316, 175 A. 679; Clark, Code Pleading, 310, 311, 2d Ed. 1947. It has been held that it is not error to omit a charge upon res ipsa loquitur when specific negligence is relied upon. Ryan v. George L. Lilley Co., 121 Conn. 26, 183 A. 2. True, a single case, reversing a plaintiff's judgment because of the nonliability of a hospital for its agents' torts, even though it was protected by insurance, adds that there, where specific negligence had been extensively shown, a charge on res ipsa should not have been given. Cristini v. Griffin Hospital, 134 Conn. 282, 57 A.2d 262. This added ground for a decision already reached appears to us not so much a general abstract mandate as an observation for the particular case. It does not seem likely that the court in so offhand a manner would have planned to establish a general requirement of election so at variance with its generous attitude as to the contentions open to a plaintiff in instituting an action. These cases cannot properly be decided on abstract principles which, however appropriate they might be under some circumstances, become unfairly restrictive under others. Here when the court decided not to explain the specific grounds of negligence—to the damage of the plaintiffs—the inference of negligence from the facts in evidence was sufficiently reasonable and natural that the plaintiffs could not fairly be denied the benefit of the doctrine.

Appellant also objects to the exclusion of a certificate of inspection of the bus, dated June 6, 1946, and made by an "observer," deceased at the time of trial, for the Connecticut Department of Motor Vehicles. It was offered pursuant to the statute, Conn.Gen.Stat.1930, § 1550, making certified records from this Department admissible as evidence of "the facts therein contained." Applicable here, it seems, is our oft-repeated admonition that admission of evidence, even inconsequential in nature, rarely causes difficulty, whereas exclusion may, even though it do no more than establish a troublesome precedent for the future. Dundom v. New York Cent. R. Co., 2 Cir., 145 F.2d 711, 713, and cases cited. The court did not explain its ruling at the time of exclusion on the objection of Firestone, but later in denying appellant's motions it stated that the certificate contained no recital of facts and the statute did not authorize its use "as evidential of conclusions, whether contained therein expressly or by implication." Perhaps this goes too far, since the report of a Motor Vehicle inspector must be a combination of observation and conclusion. But the certificate is quite ambiguous as to what it does "contain," and we are not disposed to find error in the exclusion of so doubtful a document.

We are given no information as to what were the duties of the inspector in the premises and how extensive was to be his inspection. We are left to the bare face of the document. It is an official form of "Inspection Report," which appears to relate not alone to buses, but also, in an entirely different column, to "All Vehicles." Only the section on "Buses" contains any entries; these relate to various details, such as directional signals, the brakes, the "standee permit," with the mark opposite "Yes" to the entry that the "Vehicle Passed Inspection," the insertion of the word "Fair" as to the "Vehicle Condition," and the remarks, "Bolt 2 front seats to floor." The separate section marked "All Vehicles," containing some thirty spaces covering a variety of parts to an ordinary car, including several entries as to the different tires, is not filled out at all. With nothing to tell us what, if any, significance such lack of entries had for the Department of Motor Vehicles, we can only surmise the inspector's intent. It seems rather more likely that he had no intention of certifying approval of the tires at all, but rather to show that he had made no inspection of them. This is borne out by the well-known fact that in Connecticut all vehicles, including pleasure cars, had been required to undergo an inspection as to all these details, and that such general inspection had been given up shortly before this time. Quite possibly the section of the form devoted to "All Vehicles" was for this general inspection no longer being had. The certificate thus was at the least uninforming; it could not have affected the result.

Judgments affirmed.